### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN MCMANUS, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| TEVA PHARMACEUTICALS | : | |
| USA, INC., *et al.* | : | |
| Defendants | : | NO. 19-3890 |

### MEMORANDUM

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                   August 13, 2021

The Plaintiff, Brian McManus ("Plaintiff" or "McManus"), filed suit against his former

employer, Teva Pharmaceuticals USA, Inc. ("Defendant" or "Teva"), alleging age discrimination,

in violation of the Age Discrimination in Employment Act ("ADEA") and the Pennsylvania

Human Relations Act ("PHRA"), retaliation under ADEA and PHRA, violations of the

Pennsylvania Wage Payment Collection Law ("WPCL"), and three state contract claims.

This case was referred by the Honorable Timothy Savage to Magistrate Judge Jacob Hart

on February 6, 2020 to conduct all proceedings.  ECF Doc. No. 21.  On September 25, 2020,

Defendant filed its Motion for Summary Judgment, ECF Doc. No. 27, and, on October 23, 2020,

Plaintiff filed his Response and Cross Motion for Partial Summary Judgment.  ECF Doc. No 27.

On January 6, 2020, while those motions remained pending, the case was reassigned to this Court[1]

for all further proceedings.  ECF Doc. No. 31.

A genuine issue of material fact exists regarding Plaintiff's discrimination and retaliation

claims; therefore, Defendant's motion for summary judgment will be denied in part.  This Court

will, however, grant Defendant's motion as to dismiss Plaintiff's remaining state contract claims.

---

[1] This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§§§ 1331, 1367, and 636.

Finally, Plaintiff has not produced evidence of entitlement to any alleged unpaid wages under the WPCL; thus, Defendant's motion is granted as to the WPCL claim as well.

## I.  FACTUAL AND PROCEDURAL HISTORY[2]

While unemployed, Plaintiff interviewed with Defendant in 2016, for the position of Oncology Director in its Strategic Customer Group ("SCG").  Def. Br. at ¶ 2; Pl. Br. at ¶ 3.  Jessica An from Human Resources, Thomas Rainey ("Rainey"), Senior VP of Specialty Sales & Marketing, and Fred Vitale ("Vitale"), VP of Marketing Oncology, interviewed McManus.  *Id*. During the interview, Plaintiff sought and received assurances of job security from Rainey.  *See* Plaintiff's Exhibit A, McManus Deposition at 28:24-33:19.

On March 21, 2016, Teva offered McManus the position and furnished an official "Offer Letter" that outlined the terms of his employment.  Def. Br. at ¶ 6, *see also* Def. Exhibit C.  The Offer Letter documented his position, salary, bonus structure, merit increases, and benefits.  Def. Exhibit C.  The letter further explained that:

> The first 90 calendar days of employment with Teva are an initial probationary period for all non-union employees.  The nature of your employment with us is and *will be* "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or no reason, without further obligation or liability.  Teva reserves the right to change or alter the terms of your employment and/or the terms of any plans at any time without prior notice.

Def. Exhibit C (emphasis added); *see also* Pl. Exhibit A.

McManus also received an Employee Confidentiality Agreement ("the Agreement"), which included an "At-Will" clause.  Def. Exhibits C and D.  This document stated, in relevant

---

[2]The Court has reviewed and considered the following documents in analyzing this case:  Defendant's Brief and Statement of Issues in Support of its Motion ("Def. Br."), Plaintiff's Response and Cross Motion for Partial Summary Judgment ("Pl. Br."), Defendant's Reply in Support of Summary Judgment and Brief in Opposition to Plaintiff's Partial Motion for Summary Judgment ("Def. Reply"), and the parties attached exhibits ("Ex.").

part:

> Employment At-Will. I agree and understand that nothing in this
> Agreement shall change my at-will employment status or confer any
> right with respect to continuation of employment by the Company,
> nor shall it interfere in any way with my right or the Company's
> right to terminate my employment at any time, with or without cause
> or advance notice.

Def. Exhibit D.  Plaintiff signed the Agreement and the Offer Letter.  *See* Def. Exhibits C and D.

Plaintiff worked as Director in the SCG.  Def. Br. at ¶ 2; Pl. Br. at ¶ 3.  This unit was responsible for contacting and establishing professional relationships with organizations, developing convention strategies for the oncology business unit, and developing non-products-based promotional resources.  Def Exhibit A.  As SCG Director, McManus reported directly to Rainey who then reported to Paul Rittman ("Rittman"), the General Manager of Oncology.  Pl. Br. at ¶ 3; Def. Br. at ¶ 15-17.  A year after McManus was hired, the company restructured their departments, and laid people off.  Pl. Br. at ¶ 7.  Plaintiff alleges that he was expressly advised that he would not be adversely impacted by the restructuring and reduction in force.  *Id*.

Rittman created a "Pilot Program" which changed the role of the SCG department to an oncology contracting organization which focused on oncology clinics.  Def. Br. at ¶ 18.  SCG employees transitioned to become oncology key account managers ("OKAMs") who were directed to focus entirely on contracting[3].  Def. Br. at ¶ 22-23; McManus Dep. at 56:7-17.  The SCG also took on a new hierarchy - McManus, as the new Director of Oncology Key Account Manager[4], would report to Michael Vaupel ("Vaupel"), the Director of Oncology Contracting Strategy, who in turn would report to Vitale.  McManus Dep. at 68:13-69:24; *see also* Pl. Br. at ¶ 17.  At first, McManus' job was not considered to be "at-risk," even though there were two directors in place.

---

[3] The Pilot Program was initially constructed to be a hybrid position – 50% or more of the employees would be devoted to contracting and 50% or less devoted to the old SCG role.  McManus Dep at 73:9-17.

[4] In his new position, Plaintiff was expected to function as a "player/coach;" he served as an OKAM function and also led other OKAMs.  McManus Dep. at 58:6-23; *see also* Pl Br. at ¶ 17.

Vitale Dep. at 41:5-17.

Prior to this new structure, Plaintiff and Vaupel had scant personal interaction; Vaupel was based in San Diego, California, and Plaintiff worked from Frazier, Pennsylvania. Pl. Br. at ¶ 10; Def. Br. at ¶ 30. They did not develop a strong relationship. McManus Dep. at 65:19-66:21.

First, McManus believed that the OKAMs role should remain a combination of the former SCG role, instead of solely contracting. *Id*. Second, McManus believed that Vaupel attempted to "sidestep required legal, regulatory, and compliance steps;" Vaupel would "snap" and call Plaintiff a "fossil that needed to get with the program." Pl. Br. at ¶ 11-12. Third, Plaintiff testified that Vaupel called him an "old man," on numerous occasions. McManus Dep. at 62:10-14, 62:18-20; *see also* Pl. Br. at ¶ 12. Vaupel referenced Plaintiff's age and insulted him nearly every day. Pl. Br. at ¶ 13. He insinuated that Plaintiff was "old fashioned," too slow, too stuffy, and "by the book." *Id*. Notably, McManus was in his late forties at the time of these events and Vaupel, born in 1963, was five years older than him. Def. Exhibit F[5].

Plaintiff confronted Vaupel and complained to Deb Macaleer, VP of Sales, and Vitale about the name-calling. Pl. Br. at ¶ 15-16; *see also* McManus Dep. at 170:20-171:2. Both advised him to ignore Vaupel's comments and said Plaintiff would "soon" be promoted to Senior Director[6]. Pl. Br. at ¶ 16. Plaintiff remained with Teva even as he watched employees leave due to the changing structure, because of "representations" that his job was safe. Pl. Br. at ¶ 18.

Later, Teva decided that it needed a "flatter" organization structure and determined that the Pilot Program did not need two directors; OKAMs would report directly to Vaupel, who possessed more oncology contracting experience. Def. Br. at ¶ 42-3; *see also* Vitale Dep. 99:1-5; 105:12-21; 130:11-21. Thus, on June 28, 2018, after discussing the matter with Macaleer, Vitale, age

---

[5] Plaintiff objects to Defendant's Exhibit, however, this objection is overruled.
[6] It should be noted that Plaintiff solely cites his own Declaration and no other evidence to support this promotion claim.

sixty, terminated the forty-nine-year-old McManus[7].  McManus Dep. at 122:4-12; Vitale Dep. at 99:1-5.

Teva gave Plaintiff a termination notice which stated that he was let go "as a result of a comprehensive restructuring that is crucial to restoring Teva's financial security and stability."  Pl. Exhibit 3.  Vitale, however, testified that McManus was not terminated, because of restructuring, and that "cost was never a consideration of [his,] in that decision."  Vitale Dep. 44:3-5, 99:17-25, 131:17-21.  Vitale stated that Vaupel was "part of the decision" to terminate McManus.  Vitale Dep. at 100:3-18.

On August 27, 2019, Plaintiff filed this Complaint which alleges a violation of: (1) age discrimination under ADEA and (2) PHRA; (3) breach of contract; (4) promissory estoppel; (5) fraudulent misrepresentations and omissions; (6) a violation of Pennsylvania's WPCL; and (7) retaliation in violation of ADEA and (8) Title VII of the Civil Rights Act of 1964.  *See* ECF Doc. No. 1 - Plaintiff's Complaint.

### III.  LEGAL STANDARD

A federal court shall grant a motion for summary judgment when the movant demonstrates "that there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  "A dispute is 'genuine' if 'a reasonable jury could not return a verdict for the nonmoving party,' *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)), and a fact is 'material' where 'its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019)(*citing Anderson*, 477 U.S. at 248).  Furthermore, a court "must review the facts in the light most favorable to the non-moving party." *Id*. (*citing Hugh v. Butler Cty. Family YMVA*,

---

[7] Plaintiff alleges that his termination was a "last second" decision.  Pl. Br. at ¶ 19.  Specifically, he states that: (1) the OKAM team was set to "go live," days later on July 2, 2018; and (2) his company car, that was ordered and paid for through deductions from his paycheck, was in the company lot.  *Id*.

418 F.3d 265, 267 (3d Cir. 2005).

## IV. ANALYSIS

A.  <u>Counts One and Two - Discrimination Under ADEA and PHRA</u>

"Claims premised on direct evidence of age discrimination do not require a *prima facie* case at all." *Martinez v. UPMC Susquehanna*, No. 19-2866, at *8 (citing *Swierkiewics v. Sorema N.A.*, 534 U.S. 506, 511 (2002)).  However, to prove an age discrimination case on direct evidence, a plaintiff must produce evidence "sufficient to allow the jury to find that 'the decision makers placed substantial negative reliance on the plaintiff's age in reaching their decision to fire him.'" *Fakete v. Aetna*, 308 F.3d 335, 338 (3d. Cir. 2002) (citing *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 976 (3d Cir. 1998)).  Plaintiff herein is unable to provide direct evidence.  Although Vaupel made derogatory remarks that referenced Plaintiff's age, he cannot show that Vaupel, Rainey or Macleer decided to terminate McManus based on his age.  Vitale Dep at 99:17-25, 100:9-25.  In fact, Vitale specifically testified that the decision terminate Plaintiff was to flatten the organizational structure, removing an extra director in the process. Vitale Dep. 130:11-21.  Thus, this Court must apply the *McDonnell-Douglass* burden-shifting analysis.

The Supreme Court and the Third Circuit have held that the *McDonnell-Douglass* burden-shifting analysis governs when a federal court must decide summary judgment motion under either Title VII or the ADEA[8].  *McDonnell-Douglass v. Green*, 411 U.S. 792 (1973); *see also Reeves v. Sandersons Plumbing Prods.*, 530 U.S. 133 (2000).  Under this framework, a plaintiff "relying on circumstantial evidence must first make out a *prima facie* case of discrimination."  *Martinez*, No.

---

[8]  The Third Circuit has held that courts can analyze PHRA claims under the same legal standard as ADEA claims. *Gress v. Temple Univ. Health Sys.*, 784 F, App'x 100, 104 (3d Cir 2019) (*citing Glanszman v. Metropolitan Mgmt. Corp.*, 391 506, 509 n.2 (3d Cir, 2004)).

19-2866 at *6, 2021 U.S. App. LEXIS 2520 (3d Cir. Jan. 29, 2021); see *also Reeves*, 530 U.S. at 142.

If a plaintiff can successfully establish a *prima facie* case, the burden shifts to the defendant to produce or articulate a legitimate, non-discriminatory reason for the adverse action. *Reeves*, 530 U.S. at 142. However, a defendant's burden is "relatively light" and "is satisfied if [it] provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason." *Carroll v. Guardant Health, Inc.*, No. 20-3183, 2021 U.S. Dist. LEXIS 852, *24 (E.D. Pa. Jan, 5, 2021)(*citing Burton b. Telefex, Inc.*, 707 F. 3d 417, 426 (3d Cir. 2013)). If the defendant satisfies this requirement, the burden shifts back to the plaintiff. *Id*. The only way the plaintiff can survive summary judgment is to present evidence that the proffered reason for the termination was pretextual. *Id*.

Although both the ADEA discrimination and Title VII retaliation claims require a *prima facia* showing, requirements for each vary slightly. Under ADEA, a plaintiff must show that: (1) they are a member of a protected class (forty years of age or older); (2) who was discharged; (3) they were qualified for the job at issue; and (4) the employer filled the position with a person who was sufficiently younger to create an inference of age discrimination. *Narin v. Lower Merion Township Sch. Dist.*, 206 F.3d 323, 331 (3d Cir. 2000).

Here, Plaintiff was over the age of forty at the time of his termination, thus, he qualifies as a member of a protected class. Pl. Br. at ¶ 2. Furthermore, elements two and three were satisfied; McManus was terminated from a job he was qualified to perform when Teva let him go to create a "flatter" organizational structure. *See* Vitale Dep. 130:11-21. Thus, the only element at issue here is whether Defendant filled Plaintiff's position with a person who was sufficiently younger.

The Third Circuit has not set a specific age-gap needed when examining a plaintiff's replacement. *Martinez*, No. 19-2866, at *8 (citing *Barber v. CSX Distrib. Servs.*, 68 F. 3d 694, 699 (3d Cir. 1995). Instead, "any proof that the replacement is [']sufficiently younger['] can satisfy the fourth prong." *Id*. Here, Defendant has produced evidence that not only was Plaintiff not replaced at all, to flatten their organizational structure, but his direct supervisor, Vaupel, is five years older than him. Def. Exhibit F. According to Defendant's Reply Brief, Plaintiff failed to depose Vaupel, the main antagonist in this ageism suit; however, that omission does not bar this Court from considering evidence of Vaupel's age, especially since age is the crux of the *McDonnell-Douglass* analysis' fourth element[9]. Vaupel's age, a relevant issue at hand, would foreclose Plaintiff from satisfying the fourth prong.

Other circuits, however, have held that a defendant hiring someone younger is not an absolute requirement; instead, other evidence of discrimination is sufficient to satisfy the fourth prong. The Second Circuit has held that plaintiff can still present a *prima facia* case when an employer replaces a plaintiff with an older individual, as long as they can show other evidence of discrimination. *McCarthy v. N.Y.C. Tech. Coll.*, 202 F.3d 161 (2d Cir. 2000). Meanwhile, the Eleventh Circuit held that other evidence can satisfy the fourth element even if the plaintiff was replaced by someone older. *Wright v. Southland Corp.*, 187 F.3d 1287 (11th Cir. 1999). Our sister court in the Middle District of Pennsylvania has held the same. *Grabosky v. Tammaz*, 127 F. Supp. 2d 610 (M.D. Pa. 2000).

Although the Third Circuit has held that proof of a younger replacement satisfies the fourth prong, it has not definitively ruled that strict adherence to the "sufficiently younger" requirement is the sole approach; in fact, several decisions suggest that the fourth element is flexible. *See Narin*

---

[9] In the alternative, even if this Court decided to bar evidence of Vaupel's age, Plaintiff still fails to prove the fourth element as he cannot show that he was replaced by someone younger.

*v. Lower Merion Township Sch. Dist.*, 206 F.3d 323, 331 (3d Cir. 2000)("we recognize that the elements of the *prima facia* case are not applied rigidly…"); *see also Torre v. Casio*, 42 F.3d 825, 831 n.6 (3d Cr. 1994)("This statement did not purport to create an inflexible rule.  First, our later opinion…undercuts such a reaching, since it speaks in the more flexible and permissive 'may' rather than the mandatory 'must.'  Additionally, [to] create a rigid *prima facie* burden would be inconsistent with Supreme Court authority requiring a contextual approach.").  Thus, this Court will not strictly apply the fourth element, but draw on other evidence in the record to determine whether inferences of age discrimination exist.

Plaintiff argues that, Vaupel's participation in Teva's decision to terminate him is sufficient evidence to show that a discriminatory animus possibly influenced the termination decision, citing *Abramson v. William Paterson Coll.*, 260 F.3d 265, 286 (3d Cir. 2001).  Defendant counters that Vitale decided to terminate McManus, not Vaupel.  Def. Reply at 6.  This Court agrees with Plaintiff.  Vitale testified that Vaupel was "part of the decision."  Vitale Dep. at 100:14-18.  Such an answer satisfies the fourth prong, allowing Plaintiff to establish a *prima facia* case.

The burden now shifts to the Defendant to present a legitimate, non-discriminatory reason for the adverse action.  *Reeves*, 530 U.S. at 142.  Defendant argues that its actions were not pretextual but, instead, eliminating "a redundancy." Def. Br. at 11.  It asserts that there were changes in Teva's business and budget, which necessitated the need to "flatten" its organization, by removing one director while keeping the older, more experienced director.  *Id*. at 12; *see also* Vitale Dep. at 99:1-5; 105:12-21; 120:11-21; 132:7-16.  Defendant contends that McManus's position was eliminated, not because of his performance or any alleged age discrimination, but because the program did not need two directors and Vaupel had "superior" experience with oncology contracting, which was the group's focus.  Def. Br. at 12.  Furthermore, Defendant

highlights Plaintiff's own testimony, which conceded that he thought there would be an "overlap or redundancy." Def. Br. at 12-13; *see also* McManus Dep. at 75:6-13.

Plaintiff argues that Defendant has not presented a legitimate, non-discriminatory reason for his termination. First, he asserts that Vaupel, as Plaintiff's supervisor, constantly made age-based taunts. Pl. Br. at 28-29. Second, Defendant altered the alleged reason for his termination during litigation. At the time of his termination, Teva gave Plaintiff a letter, which stated the release was "a result of a comprehensive restructuring that is crucial to restoring Teva's financial security and stability." Pl. Br. at 29; *see also* Pl. Exhibit 3. However, at Vitale's deposition, he testified that the termination had absolutely nothing to do with financial considerations. Pl. br. at 29; *see also* Vitale Dep. 44:3-5, 99:17-25.

Finally, Plaintiff points to discrepancies that would lead to an inference of discrimination. Pl. Br. at 30. First, Defendant broke company policy which traditionally allowed a direct supervisor to terminate an employee; here, Plaintiff was terminated by Vitale and not Vaupel. *Id*. Next, McManus asserts he was treated "dramatically" different than other employees. *Id*. He was: (1) escorted from the building by security; and (2) was never offered other available positions, like other similarly situated people were. *Id*.

This Court finds that Defendant has provided a legitimate, non-discriminatory reason for their adverse action. *Reeves*, 530 U.S. at 142. Defendant has consistently argued an intent to "flatten" the organizational structure and terminate Plaintiff's position as part of that strategy. Vitale Dep. 44:3-5, 99:17-25, 131:17-21. Vitale testified that Teva "didn't need the middle layer of manager level between Mike Vaupel and the four people who reported to him." Vitale Dep at 99:1-9; 103.

However, this Court finds that the Defendant's stated reason could be pretextual, which

would preclude summary judgment at this point.  Specifically, Vaupel was "part of the decision."

Vitale Dep. at 100:3-18.  A supervisor who has made numerous age-discriminatory comments to

an employee and participates in the decision-making process to terminate them creates a genuine

issue of material fact sufficient to allow Plaintiff's age discrimination case to be presented to a

jury.  Thus, this Court denies Defendant's Motion for Summary Judgment as to Count One and

Two of the Complaint.  Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty*, 477 U.S. 242, 256

(1986).

> B.      Counts Seven and Eight - Retaliation Under Title VII and the ADEA

This Court next addresses Counts Seven and Eight of Plaintiff's Complaint, McManus's

retaliation claims. [10] To establish a *prima facie* case of retaliation, "a plaintiff must show that: (1)

[they] engaged in a protected activity; (2) the employer took an adverse employment action against

[them]; and (3) there is a causal connection between the two." *Bartholomew v. St. Luke's Hosp.*,

No. 02-2876, 2003 U.S. LEXIS 7695, *16 (E.D. Pa. Apr. 29, 2003) (*citing Goosby v. Johnson &

Johnson*, 228 F. 3d 313, 323 (3d Cir. 2000); *Weston v. Pennsylvania*, 251 F.3d 420, 430 (3d Cir.

2001).

The burden then shifts to the defendant to show a legitimate non-retaliatory reason for the

adverse action.  *Kargbo v. Philadelphia Corp. for Aging*, 16 F. Supp. 3d 512, 531 (E.D. Pa. 2014)

(*citing Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).  If a defendant can provide

a legitimate, non-retaliatory reason, the burden shifts back to the plaintiff who, then, must show

that "both the employer's proffered explanation was false, and that retaliation was the reason for

the adverse employment action."  *Id*. (*citing Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d

---

[10] Although the claims are not in chronological order, they arise out of the same facts, evidence, and exhibits as Counts One and Two, above.  Furthermore, the parties make similar arguments, thus, this Court will address these two issues next.

Cir. 2006).

Defendant, the moving party, argues that even if Vaupel made derogatory age jokes, they were "stray comments" at best.  Teva cites *Carilli v. Mut. Of Omaha Ins. Co.*, to argue that stray remarks by non-decision makers are "inadequate to support an inference of discrimination by the employer."  67 F. App'x 133, 135 (3d Cir. 2003).  Teva further argues that, although McManus claims that he was terminated because he complained about Defendant's "treatment of the Opioid Crisis," *see* Plaintiff's Complaint at ¶ 73, he failed to show a nexus between his termination and those complaints.  Def. Br. at 14.   Defendant contends that it already presented a legitimate non-retaliatory reason for his termination and that Plaintiff failed to cite evidence that shows an improper motive or that individuals outside of his protected class were treated more favorably.  *Id*. Again, Defendant cites McManus' own testimony which expressed concerns about redundancy when he learned that he would report to another director.  Def. Br. at 14-15.

Plaintiff counters that the same record above supports his claim of retaliation: (1) Vaupel discriminated against him between March and June of 2018; (2) he complained about his discrimination to Vaupel, Macaleer, and Vitale; and (3) he was terminated on June 28, 2018, "a mere [two] business days before he would have had to report to Vaupel on a regular basis."  Pl. Br. at 31.  McManus contends that Teva provided inconsistent reasons for his termination that ranged from financial considerations to restructuring.  Plaintiff further asserts that he engaged in protected activity when he complained to Macaleer and Vitale about Vaupel's discriminatory remarks and was fired for that activity.  Pl. Br. at 32.

For the same reasons stated *infra* pp. 10-11, this Court finds a genuine issue of material fact and denies Defendant's motion.  First, Vitale testified that Vaupel was "part of the decision." Vitale Dep. at 100:3-18.  Since Vaupel was a part of the decision, his remarks cannot be construed as merely "stray comments."  Further, although Defendant has tried to portray Vaupel as a non-

decision-maker, even citing *Carilli*, 67 F. App'x 133, 135 (3d Cir. 2003), that position is inconsistent with the facts presently before this Court. Vitale's testimony points to Vaupel, Plaintiff's supervisor, as "part of the decision." Vitale Dep. at 100:3-18. A genuine issue of material fact exists, hence, this Court denies Defendant's Motion for Summary Judgment in regards to Plaintiff's ADEA and Title IV retaliation claims.

C.       Count Three - Breach of Contract Claim

McManus seeks summary judgment on his Count Three, breach of contract claim. He argues that Teva breached its employment agreement when he was terminated. Pl. Br. at 33. Plaintiff contends that Defendant has misinterpreted Plaintiff's Offer Letter and that the Agreement states, in clear terms, he can only be terminated for cause. *Id*. Specifically, Plaintiff reads the Agreement to mean that his status as an "at-will" employee was only for the first 90-calendar day probationary period. Pl. Br. at 35.

Defendant's motion for summary judgment on this claim argues that Plaintiff remained an at-will employee. Def. Br. at 15. Teva argues that McManus misreads the agreement to limit the at-will employment status to only the 90-day probationary period. Def. Reply at 2. The parties' dispute concerns an employment contract in Pennsylvania, therefore, this Court will apply Pennsylvania law. *See Edward v. Geisinger Clinic*, 459 F. App'x. 125, 129 (3d Cir. 2012).

In Pennsylvania, it is presumed that employment is at-will. *See Scully v. US WATS, Inc.*, 238 F.3d 497, 505 (3d Cir. 2001); *see also Geisinger Clinic*, 459 F. App'x at 129. Thus, an employee can be terminated without cause or reason. *Roberts v. Mercy Catholic Med. Ctr.*, No. 16-1894, 2019 U.S. Dist. LEXIS 68443, *22 (E.D. Pa. Apr. 23, 2019) (*citing Raines v. Haverford College*, 849 F. Supp. 1009, 2011 (E.D. Pa. 1994). A plaintiff can overcome the presumption that their employment is at-will if they are able to show "either: (1) an express contract, (2) an implied contract where circumstances around the hiring indicate that the parties did not intend the

13

employment to be 'at-will,' or (3) that the employee gave the employer some additional consideration from which the court can infer that the parties intended to overcome the presumption of at-will employment." *Id*. (*citing Veno v. Meredith*, 357 Pa. Super. 85, 515 A.2d 571, 577 (Pa. 1986). Furthermore, an employee's "subjective expectation of…guaranteed employment…based on [an] employer practices or vague employer superlatives" does not prove an employment contract for a definite term. *Edwards*, 459 F. App'x. at 129 (*citing Scully*, 238 F.3d at 505).

This Court disagrees with Plaintiff's reading of the contract. The Offer Letter clearly states that "[t]he nature of your employment with us is and **will be** 'at-will.'" Def. Exhibit C (emphasis add). It did not specifically limit the at-will relationship to the first 90 days of his employment. The Agreement also said that it "supersedes all prior negotiations, discussions, correspondence, communications, understandings and agreements between the parties…" *Id*. Thus, even if Teva and its employees orally guaranteed the job and made assurances that McManus' would not be fired, the signed and dated agreement supersedes it. Plaintiff was fully aware of his status as an "at-will" employee; he signed the Confidentiality Agreement which reiterated his at-will employment status, without the 90-day probationary language. Def. Exhibit D. Because two expressly written and signed agreements show Plaintiff's "at-will" status, his breach of contract claim, Count III, is dismissed.

D.       Count Four – Promissory Estoppel

Plaintiff claims that he provided evidence that Teva made numerous verbal representations that: (1) his position was safe, (2) he would not be terminated, and (3) he would not be subject to restructuring. Pl. Br. at 36. He contends that he relied on these representations when he initially accepted the position, and later, when he passed on "countless other opportunities" to work for other companies. *Id*.

14

Pennsylvania courts have held that a plaintiff has proven promissory estoppel if they establish that: "(1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promise; (2) the promise actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise." *Crouse v. Cyclops Indus.*, 560 Pa. 394, 745 A.2d 606, 610 (Pa. 2000). However, "an employee may not invoke promissory estoppel against an employer for termination of an at-will employment relationship. *Yellovich v. Ahold USA*, No. 14-4665, 2014 U.S. Dist. LEXIS 164922, at *11 (E.D. Pa. Nov. 2014)(*citing Paul  v. Lankenau Hosp.*, 524 Pa. 90 A.2d 346, 348 (Pa. 1990); *see also Dyche v. Bonney*, 277 F. App'x. 244, 246 n.1 (3d Cir. 2008)("[U]nder the Pennsylvania Supreme Court's decision in *Paul*, [plaintiff's] promissory estoppel theory is not a legally cognizable cause of action in Pennsylvania.")

As stated *infra* p. 14, Plaintiff was an "at-will" employee for Defendant. *See* Def. Exhibit C and D.   Moreover, Plaintiff cannot prove the third promissory estoppel element articulated in *Crouse*.  Plaintiff testified that he is currently working and has engaged in sporadic consulting work. McManus Dep. 12:1-7.  Thus, there is no injustice to be avoided.  Thus, Count Four of the Complaint must also be dismissed, and summary judgment granted in favor of Defendant.

E.      Count Five - Fraudulent Misrepresentation

Count Five of Plaintiff's Complaint alleges fraudulent misrepresentation.  ECF Doc. No. 1. To prove a claim for fraudulent misrepresentation, a plaintiff must show: "(a representation; (2) material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Yellovich*, No.14-4665 at *8 (*citing Gibbs v. Ernst*, 538 Pa. 193, 647 A.2d

882, 889 (Pa. 1994).

In fraud or misrepresentation cases, "deceit must be of an existing fact, not the breach of a promise to do something in the future. A promise to do something in the future, which is not subsequently complied with, does not constitute fraud." *Scaife Co. v. Rockwell-Standard Corp.*, 446 Pa. 280, 285 A.2d 451, 454 (1971). Plaintiff points to his testimony that to show that there were multiple representations or assurances made to him, however, this alone is not enough. He fails to present evidence to show that Vitale made a knowingly false statement or spoke with reckless disregard for the truth. In fact, the evidence before this Court shows that Vitale initially, thought the program would grow, but due to restructuring, Teva was forced to lay people off. Vitale Dep. at 40-44. A plaintiff cannot "avert summary judgment with speculation or by resting on the allegations in [their] pleadings, but rather must present competent evidence from which a jury could reasonably find in [their] favor." *O'Bryant v. City of Reading*, No. 03-6635, 2004 U.S. Dist. LEXIS 17013, at \*16 (E.E. Pa. Aug. 11, 2005) (*citing Ridgewood Board of Ed. v. N.E. for M.E.*, 172 F.3d 238, 252 (3d Cir. 1999)). Plaintiff attempts to avoid summary judgment by pointing solely to own assertions and nothing else to indicate fraud or an intent to mislead. No genuine issue of material fact exists, therefore, this Court grants Defendant's motion to dismiss Count Five.

F.      Count Six – Pennsylvania WCPL

Plaintiff asserts, in Count Six, a claim for a violation of WPCL, 43 P.S. § 260.1 *et seq* for alleged unpaid wages relating to his *pro rata* share of the 2018 bonus. Plaintiff's statement of facts alleges that he was never paid but fails to further address or cite any evidence to support this argument. Defendant argues that, under Teva's Separation Benefits Policy, McManus was only eligible for an incentive bonus if: a) he worked for over 1,000 hours; and b) was an active employee

on February 1, 2019.  Def. Br. at 20.  Plaintiff was discharged on June 2018, thus, he was not

entitled to any bonus.  Def. Br. at 20-21.  Defendant further asserts that Plaintiff thought he was

entitled to this *pro rate* share of the bonus, because it was an "industry norm;" it was not Teva's

policy.  Def. Br. at 21.

Plaintiff has not provided any evidence that a genuine issue of material fact exists as to his

bonus claim.  Nor did he even address this argument in his brief.  Thus, a genuine issue of material

fact does not exist and this Court hereby grants Defendant's motion for summary judgment and

dismisses Count Six.

## IV.   CONCLUSION

Plaintiff, Brian McManus, alleges that his former employer, Teva Pharmaceuticals USA,

Inc., fired him, because of age discrimination and retaliation.  After considering the parties

extensive briefings, this Court denies Defendant's motion as to the discrimination and retaliation

claims (Counts One, Two, Seven and Eight).  However, because there are no genuine issues of

material fact, this Court also grants Defendant's motion for summary judgment and denies

Plaintiff's cross-motion for partial summary judgment regarding Breach of Contract (Count

Three), Promissory Estoppel (Count Four); Fraudulent Misrepresentation (Count Five), and his

WPCL claim (Count Six).